FILED

2008 Sep-05  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICHARD LAWLEY,                          ]
                                         ]
       Plaintiff,                        ]
                                         ]
vs.                                      ]       2:08-CV-00825-LSC
                                         ]
DANVILLE REGIONAL FOUNDATION,            ]
                                         ]
       Defendant.                        ]

MEMORANDUM OF OPINION

I.     Introduction.

       The Court has for consideration Defendant's Motion to Quash Service

and Motion to Dismiss, which was filed on May 23, 2008. (Doc. 10.) Plaintiff

subsequently filed a motion to amend his Amended Complaint to add

additional defendants (Doc. 23), and Defendant filed a motion to dismiss the

Second Amended Complaint (Doc. 24).   The issues raised in Defendant's

motions to dismiss have been briefed by both parties, and the parties have

notified the Court that they are ready for a ruling on those motions.[1]  After

_____

[1]In his response to Defendant's first motion to dismiss on June 6, 2008, Plaintiff
asks that this Court defer ruling until discovery on the issue of jurisdiction has been
completed.  (Doc. 15 at 8.)  Plaintiff has since supplemented his evidentiary submissions

full consideration of the legal arguments and evidence presented, it is the opinion of this Court that Plaintiff's action is due to be dismissed.

II.    Background.

On or about August 21, 2002, Danville Regional Health System ("DRHS"), a health system that operated medical care facilities in Danville, Virginia, extended an offer of employment to Richard Lawley ("Lawley" or "Plaintiff") to serve as its Vice President of Human Resources.  At that time, Lawley was a resident citizen of Helena, Alabama.  The employment offer included a provision for severance pay, relocation expenses including normal seller's costs for sale of Lawley's Alabama residence, and reimbursement for the cost of airfare to Alabama every three weeks until the family relocated to Virginia.  Lawley signed the offer of employment on February 11, 2003, in Alabama and returned it to DRHS.  Plaintiff began working for DRHS in Danville, Virginia, in early March 2003.

On or about June 24, 2005, Lawley received a letter from DRHS stating that another company was purchasing substantially all of the assets of DRHS

_____

(Doc. 27), and the Court was notified via email on August 13, 2008, that after consultation, counsel requested that the Court rule on the pending motions to dismiss.

on June 30, 2005.  Plaintiff's employment with DRHS, therefore, would be terminated at midnight on June 30, 2005, and his employment with the purchasing company would begin at 12:01 a.m. on July 1, 2005.

On October 4, 2005, Lawley sent DRHS's Chairman and CEO, Dr. B.R. Ashby ("Dr. Ashby"), a letter demanding payment of the severance benefits outlined in his offer of employment.  Dr. Ashby rejected that demand and a subsequent demand mailed by Plaintiff on November 10, 2005.

Lawley initiated this action for breach of contract on March 27, 2008, in the Circuit Court of Shelby County, Alabama, against Danville Regional Foundation ("the Foundation").  Plaintiff contends that the Foundation is the successor in interest to DRHS.   In his proposed Second Amended Complaint, Lawley adds DRHS and Danville Foundation House, another alleged successor in interest, as defendants.  For the purposes of analysis, the Court will assume that Plaintiff's motion to file his Second Amended Complaint was granted and the assertions therein are the ones at issue in this case.

III.    Standard.

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Since federal courts are courts of limited jurisdiction, subject matter jurisdiction must exist before a court can decide any issues presented in the case. *See id.*  A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may attack jurisdiction either facially or factually. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)).  "'Facial attacks' on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for purposes of the motion.'" *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  On the other hand, "'[f]actual attacks' . . . challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as

testimony and affidavits, are considered.'"  *Lawrence*, 919 F.2d at 1529
(quoting *Menchaca*, 613 F.2d at 511).

Procedurally, facial and factual attacks differ.  *See Lawrence*, 919 F.2d
at 1529.  "On a facial attack, a plaintiff is afforded safeguards similar to
those provided in opposing a Rule 12(b)(6) motion—the court must consider
the allegations of the complaint to be true." *Lawrence*, 919 F.2d at 1529
(citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).  However,
"when the attack is factual, the trial court may proceed as it never could
under Rule 12(b)(6) or Fed. R. Civ. P. 56."  *Lawrence*, 919 F.2d at 1529.
Since the court's ability to exercise jurisdiction over the case is at issue in
a factual 12(b)(1) motion, "there is substantial authority that the trial court
is free to weigh the evidence and satisfy itself as to the existence of its
power to hear the case.  In short, no presumptive truthfulness attaches to
plaintiff's allegations, and the existence of disputed material facts will not
preclude the trial court from evaluating for itself the merits of jurisdictional
claims."  *Id*.  The burden of proof on a Rule 12(b)(1) motion is on the party
averring jurisdiction.  *Gilmore v. Day*, 125 F. Supp. 2d 468, 471 (M.D. Ala.
2000) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

IV.    Discussion.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id*. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (STEVENS, J., concurring in judgment); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*.

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "[W]ith respect to interstate contractual obligations, [the U.S. Supreme Court has] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *Id.* at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).

Plaintiff argues that this Court has specific jurisdiction over DRHS, and the Foundation and Danville Foundation House as alleged successors in interest to DRHS, because: (1) the employment contract at issue was signed by Lawley in Alabama; (2) DRHS negotiated the terms of the employment contract with Lawley while he was in Alabama; and (3) several terms of the employment contract relate to the sale of Lawley's Alabama residence and return trips made necessary while Plaintiff's family remained in Alabama pending an eventual move to Virginia.  Plaintiff has also introduced evidence that a "local employment recruiter" was the one who first informed him about the DRHS position.  There is no evidence, however, nor has it been

argued in any submission to this Court, that the recruiter acted as an employee or agent of DRHS.

While Lawley does not dispute that DRHS and the proposed additional defendants have not transacted business in Alabama; have not rendered any services in Alabama; and do not have any offices, bank accounts, property, or assets in Alabama, Plaintiff contends that due to the contacts enumerated above, DRHS or its alleged successors "should not be surprised" to be sued in Alabama.  (Doc. 15 at 8.)  However, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp.*, 471 U.S. at 474 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  "Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the [Supreme] Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." *Id.* (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 295).  "Instead, 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he

should reasonably anticipate being haled into court there.'" *Id.* (quoting

*World-Wide Volkswagen Corp.*, 444 U.S. at 297).  "In defining when it is that

a potential defendant should 'reasonably anticipate' out-of-state litigation,

the [Supreme] Court frequently has drawn from [the following reasoning]:

> The unilateral activity of those who claim some
> relationship with a nonresident defendant cannot
> satisfy the requirement of contact with the forum
> State.  The application of that rule will vary with the
> quality and nature of the defendant's activity, but it
> is essential in each case that there be some act by
> which the defendant purposefully avails itself of the
> privilege of conducting activities within the forum
> State, thus invoking the benefits and protections of
> its laws.

*Id.* at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "Thus

where the defendant deliberately has engaged in significant activities within

a State, or has created continuing obligations between himself and residents

of the forum, he manifestly has availed himself of the privilege of

conducting business there, and because his activities are shielded by the

benefits and protections of the forum's laws it is presumptively not

unreasonable to require him to submit to the burdens of litigation in that

forum as well."  *Id.* at 475-76 (quotations and citations omitted).

"[A]n individual's contract with an out-of-state party alone [does not] automatically establish sufficient minimum contacts in the other party's home forum." *Id.* at 478.  Rather, the Supreme Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Id.* at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943)).  "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*

In this case, DRHS negotiated to employ an Alabama resident for a position in Danville, Virginia.  The real object of the transaction was Plaintiff's employment in Virginia.  The resulting contract did not contemplate that Plaintiff would perform any work or have any job responsibilities in Alabama, but it did provide for assistance with Lawley's move from Alabama and transition to residency in Virginia.  The purported

breach of contract occurred in Virginia after Lawley had worked there for over two years.  While Lawley contends that it is key that the contract was executed in Alabama because he signed the document in Alabama, it must be the "actions of the *defendant* himself that . . . create a 'substantial connection' with the forum."  *Johnston v. Basil, Inc.*, 802 F.2d 418, 420 (11th Cir. 1986) (emphasis added and omitted).  The evidence simply does not show that the defendant(s) engaged in activities that "fall within the realm of purposeful availment of the benefits and protections of Alabama laws."  *Id*.  Therefore, this Court does not have jurisdiction over the defendant(s).

V.     Conclusion.

        For the reasons outlined above, Plaintiff's action will be dismissed without prejudice.  A separate order will be entered.

        Done this 5th day of September 2008.

                                          _____
                                          L. SCOTT COOGLER
                                          UNITED STATES DISTRICT JUDGE
                                          139297